2013 OK CIV APP 32

WESTOAK INDUSTRIES, INC. and Ace Fire Underwriters, Petitioners,

v.

Debbie DeLEON and the Workers' Compensation Court, Respondents.

No. 110,023.

Court of Civil Appeals of Oklahoma, Division No. 4.

March 14, 2013.

Michael D. Antkowiak, Bullard & Associates, Oklahoma City, Oklahoma, for Petitioners.

Fred L. Boettcher, Boettcher & Lee Law, Ponca City, Oklahoma, for Respondent.

KEITH RAPP, Judge.

¶ 1 WestOak Industries, Inc. (Employer) and its workers' compensation insurance carrier, Ace Fire Underwriters, appeal a decision of the Three Judge Panel of the Workers' Compensation Court which affirmed the trial court's order finding Debbie DeLeon (Claimant) sustained a work-related injury. Based upon our review of the record and applicable law, this Court sustains the order under review.

## BACKGROUND

¶ 2 Claimant filed a Form 3 on January 18, 2011, alleging cumulative trauma to her lungs and upper respiratory system due to inhalation of fumes and vapors and exposure to chemicals while employed with Employer. At a trial held on July 14, 2011, Claimant testified she worked for Employer for approximately twenty-one years. Her tasks included soldering circuit boards and painting in an enclosed area. She did not have a mask for the former task. The mask for the painting assignments was standard issue and did not fit well. Claimant testified she began to have symptoms of difficulty of breathing and a voice change approximately two years prior to trial. Claimant stated her current problems included shortness of breath, con-

stant fatigue, and trouble speaking.[1] She associated the problems with her work environment.

¶3 In 2010, Claimant sought treatment from her private physician. Claimant acknowledged she smoked approximately half a package of cigarettes daily. Non-cancerous nodes were found on her lung. An inhaler was prescribed for temporary relief.

¶4 Claimant was subsequently examined by another physician who determined she sustained a work-related injury to her pulmonary system, lungs, voice and larynx due to cumulative and repetitive exposures arising out of her employment with Employer and, more specifically, to two compounds identified in Claimant's work, Humiseal Aerosol and Humiseal Thinner.[2] The court admitted Claimant's medical report into evidence over Employer's probative value objection.[3]

¶5 In addition, the court admitted Employer's medical report over Claimant's probative value objection. The report indicated Claimant's condition was the direct result of over fifteen years of heavy smoking and exposure to second hand smoke. Employer also offered documentation from the Oklahoma Department of Labor concerning a Full Health Survey of Employer's workplace conducted on May 5, 2005, which showed the presence of hazardous materials was within regulatory limits on the date of the report. The court admitted the report, noting it had no information for the period preceding or following May 5, 2005.

1. Claimant's Form 3 listed injured or affected body part as: upper respiratory and lung exposure. Employer did not object to Claimant's testimony related to her voice and speaking difficulty.

2. The compounds, Humiseal Aerosol and Humiseal Thinner, were listed in Claimant's Exhibit 2, Material Safety Data Sheets (MSDS), which was admitted over Employer's objection. The MSDS documents for both compounds reflect they may adversely affect people with chronic disease of the respiratory system.

3. At trial, Employer argued Claimant's physician had not considered other causes, such as a prior pneumonia. However, Employer conceded it did not have any evidence that a prior pneumonia was a cause of Claimant's problem.

4. Title 85 O.S.2011, § 340(D), provides:

¶6 By order dated July 25, 2011, the court held Claimant sustained a work-related injury to her lungs and larynx and that her work activities were the major cause of the injury. Employer appealed to the Three–Judge Panel, which affirmed the order. Employer appeals.

¶7 By show cause order entered on April 4, 2012, this Court directed the parties to submit briefs and appear for oral arguments on the issue whether 85 O.S.2011, § 340(D)(4) violates the "separation of powers" doctrine contained in Article 4, Section 1 of the Oklahoma Constitution.[4] The parties complied and oral arguments were held on May 7, 2012.

## BACKGROUND

¶8 In 2011, the Legislature prescribed this Court's standard of review for factual issues in 85 O.S.2011, § 340(D). At issue is the meaning of the language in Section 340(D)(4) and whether it violates the separation of powers rule set forth in Article 4, Section 1 of the Oklahoma Constitution. The meaning of statutory language is a pure issue of law that stands before this Court for *de novo* review. *Manley v. Brown*, 1999 OK 79, 989 P.2d 448. *De novo* review means plenary, independent and non-deferential review. *Multiple Injury Trust Fund v. Pullum*, 2001 OK 115, ¶8, 37 P.3d 899, 903–04.

¶9 Until the Legislature adopted Section 340(D)(4) in 2011, the settled standard of

After the effective date of this act, regardless of the date of injury, the Supreme Court may modify, reverse, remand for rehearing, or set aside the order or award upon any of the following grounds:

. . . .

4. The order or award was against the clear weight of the evidence.

Article 4, Section 1 of the Oklahoma Constitution provides:

§ 1. Departments of government—Separation and distinction.

The powers of government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.

review by an appellate court for findings of fact was the traditional test set forth in *Parks v. Norman Mun. Hosp.*, 1984 OK 53, 684 P.2d 548.[5] Pursuant to this standard, findings of fact made by the Workers' Compensation Court are conclusive and binding upon an appellate court where there is any competent evidence reasonably tending to support such findings. *Id.* at ¶ 2, 684 P.2d at 549.[6] Parks did not alter the distinctions between standards of review for fact determinations and conclusions of law.[7] *Yocum v. Greenbriar Nursing Home*, 2005 OK 27, ¶ 9, 130 P.3d 213, 219 (citing *Parks*, 1984 OK 53 at ¶ 12 n. 8, 684 P.2d at 552 n. 8).[8]

¶ 10 In 2010, the Legislature enacted 85 O.S.2001 and Supp. 2010, § 3.6(C). Section 3.6(C) changed the standard of review for factual determinations to "against the clear weight of the evidence." However, it was unclear whether Section 3.6(C) applied retrospectively or only prospectively. The Oklahoma Supreme Court resolved this issue in *Dunlap v. Multiple Injury Trust Fund*, 2011 OK 14, 249 P.3d 951, wherein the Court held the date of injury applied so that causes involving injuries predating the statute were to be reviewed under the *Parks* standard of review. The Court specifically ruled the amendment applied only prospectively.

¶ 11 On August 26, 2011, the Legislature enacted 85 O.S.2011, § 340(D)(4), providing for the "against the clear weight of the evidence" standard, "after the effective date of the act and regardless of the date of injury." However, on May 8, 2012, the Oklahoma Supreme Court applied *Dunlap* in *Nomac Drilling LLC v. Mowdy*, 2012 OK 45, 277 P.3d 1282. The Court held that because the claimant's injury preceded the effective date of the amendments to the Workers' Compensation Act, the law at the time of claimant's injury governed. *Id.* at ¶ 8, 277 P.3d at 1284. Thus, the any competent evidence standard of review from *Parks* applied. *Id.* The Court did not cite or address Section 340(D)(4).

¶ 12 Subsequently, however, the Court addressed Section 340(D) in *Williams Cos. v. Dunkelgod*, 2012 OK 96, 295 P.3d 1107 (rehearing denied Jan. 23, 2012), and deemed the statute unconstitutional as applied to that case, holding that it impermissibly abrogated a substantive right belonging to the claimant that accrued on the date of her injury. *Id.* at ¶¶ 16–18, 32, 295 P.3d 1107. Oklahoma appellate courts have since then relied on *Dunkelgod* and *Nomac* in several opinions where an improper standard of review was applied in reliance on the "regardless of date of injury" language of Section 340(D)(4). *See, e.g., Prince v. Brake Rebuilders & Friction Products, Inc.*, 2012 OK 104, 298 P.3d 529; *Controls Components, Ltd. v. Weaver*, 2013 OK 8, —— P.3d ——, 2013 WL 433120; *City*

5. *Parks* applied the relevant statute in effect, 85 O.S.2001, § 26(B) which provides, in relevant part:

> [The] decision of the [Workers' Compensation] Court shall be final as to all questions of fact, and except as provided in Section 3.6 of this title, as to all questions of law.

The pertinent provisions of 85 O.S.2001, § 3.6(A) are:

> A. The Court en banc may reverse or modify the [trial judge's] decision only if it determines that such decision was against the clear weight of the evidence or contrary to law....

6. *Parks* represents a continuation of the court-established standard of review pertaining to findings of fact made by the trier of fact. *See e.g. Merrill v. State Indus. Comm'n*, 1955 OK 332, 290 P.2d 1095 (Syl. 3); *Associated Employers' Reciprocal v. State Indus. Comm'n*, 1921 OK 323, 200 P. 862.

7. The Supreme Court noted the distinction in *Loggins v. Wetumka General Hosp.*, 1978 OK 150, ¶ 11, 587 P.2d 455, 457 (fact determinations are not reviewed independently, but conclusions of law are reviewable).

8. Neither Section 26, nor any predecessor version of the statute, directed the Supreme Court to apply a specific standard of review. The legislative directive in Section 26 simply *paralleled* the Supreme Court's long-established, traditional view of the "fact-finding" function of the workers' compensation and other trial courts, as discussed more fully *infra*. Notably, from 1915 until 2010, factual decisions of the workers' compensation court were deemed conclusive under relevant statutes. Thus, the Supreme Court discharged its adjudicative authority for more than 90 years by reviewing workers' compensation decisions for errors of law only, and reviewing factual determinations only to the extent they were shown to be unsupported by competent evidence, *i.e.*, the traditional "any competent evidence" standard of review. This is consistent with the function of appellate courts generally and the Oklahoma Supreme Court throughout its history, as discussed more fully *infra*.

*of Okla. City v. Johnson*, 2013 OK CIV APP 6, 294 P.3d 470. None of these cases addressed whether the statute was unconstitutional on its face because it violated the "separation of powers" provision of Article 4 of the Oklahoma Constitution.[9] This is the issue addressed here.

## DISCUSSION

 ¶ 13 The primary goal of any inquiry into the meaning of the terms of a statute is to ascertain legislative intent. *Yocum*, 2005 OK 27 at ¶ 9, 130 P.3d at 219. Legislative intent will be ascertained from the plain meaning of the statute's terms whenever possible. *Id.* In the present case, through Section 340(D)(4), the Legislature clearly intended an appellate court to review a workers' compensation court or three judge panel's final findings of fact under the standard of review "against the clear weight of the evidence," regardless of when the date of injury occurred. The question before this Court is whether Section 340(D)(4) impermissibly infringes on the power of the court by exercising judicial power in violation of the separation of powers doctrine.

¶ 14 The Oklahoma Constitution, Article 4, § 1, divides the powers of state government into three separate branches—Legislative, Executive, and Judicial—and prohibits the departments from exercising powers belonging to the others. *Conaghan v. Riverfield Country Day Sch.*, 2007 OK 60, ¶ 20, 163 P.3d 557, 564. The framers of the Constitution clearly intended a separation of power among the executive, legislative, and judicial branches of government. *Dank v. Benson*, 2000 OK 40, ¶ 6, 5 P.3d 1088, 1091. General constitutional order is offended when one department of government usurps power expressly delegated to another. *Id.* Although each branch may exercise some control over another branch in the form of checks and balances, the power to interfere is a limited

one. 16A Am.Jur.2d Constitutional Law § 260 (2012). A branch may not interfere where doing so will threaten the independence or integrity or invade the prerogatives of another branch. *Id.* A branch may not interfere with the functions and powers of another branch so as to usurp those functions and powers.

It is the constitutional obligation of the judiciary to protect its own proper constitutional authority by upholding the independence of the judiciary. Intrinsic within state sovereignty is an interest protecting the credibility of the state judiciary. In a general way, the courts possess the entire body of judicial power, and the judiciary may not assign its powers to either of the other branches of government. The other departments cannot, as a general rule, properly assume to exercise any part of the judicial power, nor can the constitutional courts be hampered or limited in the discharge of their functions by either of the other two branches.

*Id.*

¶ 15 In the judicial branch, judicial power is conferred on the courts by the constitution. The judiciary is invested primarily with an adjudicative function, the authority to hear and determine forensic disputes. *Yocum*, 2005 OK 27 at ¶ 13, 130 P.3d at 220. Judicial power specifically includes judicial review. "In a general way the courts possess the entire body of judicial power. The other departments cannot, as a general rule, properly assume to exercise any part of this power, nor can the constitutional courts be hampered or limited in the discharge of their functions by either of the other two branches." *In re Advisory Opinion to the Governor*, 213 So.2d 716, 719 (Fla.1968).

¶ 16 Conversely, the Legislature's role is primarily confined to making laws, including substantive law which creates, defines, and regulates the rights of parties in a court of

---

9. In *Harvey v. Auto Plus of Woodward*, 2012 OK CIV APP 92, 287 P.3d 410, Division I of the Court of Civil Appeals addressed the separation-of-powers question and deemed the statute constitutional. The Court in *Harvey* made that finding, however, in conjunction with its determination that Section 340(D)(4) should be applied retroactively to impose a "clear weight of the evidence" standard of review to an appeal by a claimant whose injury occurred prior to the effective date of Section 340(D). Because the Supreme Court in *Dunkelgod* specifically rejected the latter holding, this Court does not consider *Harvey* to be persuasive authority in this matter. Moreover, this Court believes it to be in error with regard to the separation of powers question.

law. *See Fent v. Contingency Review Bds.*, 2007 OK 27, ¶ 12, 163 P.3d 512, 521. Article 7 of the Oklahoma Constitution recognizes the Legislature may change or abolish certain statutory courts, boards, agencies, and commissions. However, such legislative power does not extend to the constitutionally created Supreme Court. Article 7, § 1 provides:

The judicial power of this State shall be vested in the Senate, sitting as a Court of Impeachment, a Supreme Court, the Court of Criminal Appeals, the Court on the Judiciary, the State Industrial Court, the Court of Bank Review, the Court of Tax Review, and such intermediate appellate courts as may be provided by statute, District Courts, and such Boards, Agencies and Commissions created by the Constitution or established by statute as exercise adjudicative authority or render decisions in individual proceedings. Provided that the Court of Criminal Appeals, the State Industrial Court, the Court of Bank Review and the Court of Tax Review and such Boards, Agencies and Commissions as have been established by statute shall continue in effect, subject to the power of the Legislature to change or abolish said Courts, Boards, Agencies, or Commissions. Municipal Courts in cities or incorporated towns shall continue in effect and shall be subject to creation, abolition or alteration by the Legislature by general laws, but shall be limited in jurisdiction to criminal and traffic proceedings arising out of infractions of the provisions of ordinances of cities and towns or of duly adopted regulations authorized by such ordinances. (Emphasis added.)

In addition, Article 7, § 4 provides that the Supreme Court's "appellate jurisdiction shall be coextensive with the State and shall extend to all cases at law and in equity," and the Court's "original jurisdiction ... shall extend to a *general superintending control* over all inferior courts and all Agencies, Commissions and Boards created by law." (Emphasis added.)

¶ 17 In *Jackson v. Freeman*, 1995 OK 100, ¶ 17, 905 P.2d 217, 221, the Oklahoma Supreme Court noted that Article 7, § 1 recognizes the Legislature's power to:

(1) provide intermediate appellate courts; (2) create or provide for the exercise of adjudicative authority by boards, agencies, or commissions in individual proceedings; (3) change or abolish the Court of Criminal Appeals, the State Industrial Court, the Court of Bank Review and the Court of Tax Review and such Boards, Agencies and Commissions as have been established by statute; and (4) create, change, or abolish municipal courts.

*Id.* (holding the Legislature had authority to create an emergency division of the Court of Criminal Appeals). However, notably absent from this list—and from the constitutional language—is any legislative power to change, alter, or interfere with the Supreme Court's existence, operation, or the scope of its appellate or original jurisdiction. Accordingly, the question before this Court is whether the Legislature has interfered to the point of usurping the functions and powers of the judicial branch through its enactment of a specific standard of review in Section 340(D)(4) in violation of the separation of powers doctrine.

¶ 18 Claims filed under the Workers' Compensation Code, 85 O.S.2001, § 301 *et seq.*, are subject to fact finding within the limited jurisdiction of the Workers' Compensation Court. *Owings v. Pool Well Serv.*, 1992 OK 159, ¶ 6, 843 P.2d 380, 382 (citing the previous section of the Workers' Compensation Act, 85 O.S. § 3.6).[10] The Workers' Compen-

---

10. Since workers' compensation was first recognized in Oklahoma in 1915, the state has undergone at least three (3) major reformations and renaming of its workers' compensation statutes. As initially enacted, the workers' compensation provisions were referred to as the "Workmens Compensation Law." Okla. Sess. Laws 1915 ch. 246 (codified at Okla. Stat.1921, ch. 56, §§ 7282 through 7340). In 1977, legislators enacted sweeping amendments that became effective July 1, 1978, and were renamed as the "Workers' Compensation Act," 85 O.S. Supp.1977 §§ 1 through 181. Though subject to numerous revisions and amendments over the years, the Act remained in effect until 2011, when it was repealed and the new "Workers' Compensation Code," 85 O.S.2011 §§ 301 through 413, became effective on August 26, 2011. Section 340(D) was enacted on August 26, 2011, and is part of the new Workers' Compensation Code.

sation Court serves as a trier of fact and renders a decision. *Id.* A party may seek relief from either the Three–Judge Panel of the Workers' Compensation Court or on direct appeal to the Supreme Court. The Three–Judge Panel reviews the factual findings of the trial judge pursuant to the against the clear weight of the evidence standard. *Id.* A party may also seek appellate review of the panel's decision. *Id.*

¶ 19 An appellate court begins its consideration of the issues on appeal by identifying the appropriate standard of review.[11] "For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo* ), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490; Reif, John J., *Standards of Review,* 79 Okla. B.J. 34 (Jan. 12, 2008). The standard of review provides the mechanism through which an appellate court considers purported trial court errors, scrutinizes the record, and analyzes the arguments raised by the parties. *See Myers v. State,* 2005 OK CR 22, 130 P.3d 262, Lumpkin, V.P.J. specially concurring (defining the standard of review as "all-important" and which "establishes an objective test that will enable the District Courts and litigants to understand the applicable law and respond accordingly."); *see also Seabolt v. State,* 2006 OK CR 50, 152 P.3d 235 (Lumpkin, V.P.J. dissenting)("[T]he standard of review is the criterion by which the decision of a lower tribunal will be measured by a higher tribunal to determine its correctness or propriety.") "An appellate court's standard of review is not mere ritualistic legal liturgy. It defines the permissible sweep of critical testing to be undertaken by a reviewing court." *Oklahoma City Zoological Trust v. State ex rel. Public Employees Relations Bd.,* 2007 OK 21, ¶ 5, 158 P.3d 461, 463–64.

¶ 20 On appeal, an appellate court's standard of review depends on whether the action is one at law or one in equity and whether the issue(s) is purely legal or involves factual determinations. *Robert L. Wheeler, Inc. v. Scott,* 1991 OK 95, ¶ 12, 818 P.2d 475, 479. In an action at law, either before a jury or the trial judge, the appellate standard of review for factual questions is whether there is any competent evidence to support the judgment. *White v. McDonald,* 1968 OK 168, 447 P.2d 746, 749–50. The appellate court does not weigh the evidence as that is the exclusive province of the jury or trial judge in a bench trial. *Stroud v. Arthur Andersen & Co.,* 2001 OK 76, ¶ 9, 37 P.3d 783; *Florafax Int'l Inc. v. GTE Market Resources,* 1997 OK 7 at ¶ 3, 933 P.2d 282, 287. The credibility of witnesses and the effect of and weight given to their testimony, as well as the resolution of conflicting or inconsistent testimony, are questions of fact to be determined by the trier. *Sides v. John Cordes, Inc.,* 1999 OK 36, ¶ 17, 981 P.2d 301, 307–08. Appellate courts defer to the judgment of the court nearest the evidence—the court which has seen and heard the witnesses and testimony first-hand. "The long-term experience of the common law system has shown that efficient, economical and fair appellate review should not duplicate the trial court process, but instead, focus on the decision of the trial court and the procedure used to reach that decision." Reif, John F., Standards of Review, 79 Okla. B.J. 34, 37 (Jan. 12, 2008). As previously discussed, with respect to workers' compensation, nonjurisdictional fact questions have historically been reviewed on appeal under the *Parks* "any competent evidence" standard of review.

¶ 21 In an equity case, on the other hand, an appellate court weighs the evidence to determine whether the judgment is against the clear weight of the evidence. *SCS/Compute, Inc. v. Meredith,* 1993 OK CIV APP 124, ¶ 18, 864 P.2d 1292, 1295–96 (action at law, distinguishing standards of review and rejecting attempt to rely upon equitable standard of review).

¶ 22 Questions of law are reviewed *de novo. Lierly v. Tidewater Petro-*

11. For an historical review of the evolution of the appellate process, *see, Seabolt v. State,* 2006 OK CR 50, 152 P.3d 235, Lumpkin, V.P.J. dissenting; Kelly Kunsch, Standard of Review (State and Federal): A Primer, 18 Seattle Univ. L. Rev. 11, 15–18 (1994).

*leum Corp.,* 2006 OK 47, ¶ 16, 139 P.3d 897, 903. "An appellate court claims for itself plenary, independent and nondeferential authority to re-examine a trial court's legal rulings." *National Diversified Bus. Serv., Inc. v. Corporate Fin. Opportunities, Inc.,* 1997 OK 36, ¶ 9 n. 18, 946 P.2d 662, 666 n. 18. The *de novo* standard of review applies to contested questions of law regardless of the type of proceeding involved. *Danne v. Texaco Exploration and Prod., Inc.,* 1994 OK CIV APP 138, ¶ 7, 883 P.2d 210, 213 (citing *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991)).

¶ 23 Thus, the standard of review is clearly the expression of the guideline and boundary that an appellate court imposes on its exercise of the intellectual process whereby the appellate court determines whether a judgment or a decision in a cause has, or has not, conformed to governing law. The standard of review is a core, crucial element guiding the judicial function at the appellate level. It is an indispensible, integral component of the exercise of judicial power.

¶ 24 Notwithstanding the applicable standards of review historically used by an appellate court, the Legislature has under this statute, Section 340(D)(4), directed a specific standard of review for an order or award of the Workers' Compensation Court. This standard drastically alters appellate review and fails to recognize the long-established deference traditionally afforded by appellate courts to the determination of "fact-finders" in court proceedings. *See Yocum,* 2005 OK 27 at ¶ 18, 130 P.3d at 218 ("[The] trial tribunal is the sole judge of the credibility of witnesses and of the weight and value to be accorded to the testimony adduced.") In essence, the statute supplants the discretion of the appellate court to operate as a court of appeal. *See Puckett v. Cook,* 1978 OK 108, ¶ 15, 586 P.2d 721, 722–23 (while "[t]here is nothing inherently improper in a statute

which define[s] procedure," the statute may not "seek to supplant [the] exercise of sound judicial discretion" or it will be deemed an unconstitutional encroachment by the Legislature on the Judiciary). "A legislative removal of the discretionary component in adjudicative process is a usurpation of the courts' freedom that is essential to the judiciary's independence from the other two branches." *Yocum,* 2005 OK 27 at ¶ 13, 130 P.3d at 220. The Legislature may not "restrict the independence of judicial decision-making process." *Id.* at ¶ 14, 130 P.3d at 220 (citing *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). *See e.g., Conaghan v. Riverfield Country Day Sch.,* 2007 OK 60 at ¶¶ 20–22, 163 P.3d at 564–65 ("The Legislature is confined to mandating what facts must be adjudged. It may neither predetermine adjudicative facts nor direct that their presence or absence be found from any proof before a tribunal."); *Booze v. District Ct. of Lincoln County,* 1961 OK CR 98, 365 P.2d 589 (finding a legislatively mandated continuance violated the separation of powers doctrine because the granting of a continuance is either the exercise of judicial discretion upon particular facts or the application of law to facts ascertained by the court, and both are an exclusively judicial act).

¶ 25 Accordingly, the Court finds 85 O.S. 2011, § 340(D)(4) constitutes an encroachment by the Legislature upon a power or duty of the judiciary and therefore violates the separation of powers provision of Article 4, § 1 of the Oklahoma Constitution. Section 340(D)(4) is therefore unconstitutional.[12]

¶ 26 This Court decides here that the any competent evidence standard of review remains applicable as specified in *Parks.*[13] This Court must sustain the Workers' Compensation Court's determination of a fact issue if it is supported by any competent evi-

---

**12.** This opinion does not address the criteria in 85 O.S.2011, § 340(D)(1)–(3). However, this Court notes that those criteria merely recite existing bases for reversal by an appellate court. In terms of *Parks,* lack of jurisdiction, fraud, and contrary to law are "traditional" standards of review. Thus, Section 340(D)(1)–(3) appears to be redundant because the statute merely reit-

erates that which is already a function the appellate court exercises independently.

**13.** This Court notes that Claimant's date of awareness and date of last exposure precede the effective date of the predecessor to Section 340(D).

dence. *Parks*, 1984 OK 53 at ¶ 12, 684 P.2d at 552. The task for this Court is to "canvass the facts, not with an object of weighing conflicting proof in order to determine where the preponderance lies but only for the purpose of ascertaining whether the tribunal's decision is supported by competent evidence." *Id.* It is only in the absence of this support that the trial court's decision may be viewed as erroneous. *Id.*

## ANALYSIS

¶ 27 On appeal, Employer asserts Claimant's medical report does not meet the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Christian v. Gray*, 2003 OK 10, 65 P.3d 591, standard for admissibility. Employer did not make this objection to the admission of the report in the proceedings below. Thus, the objection is waived. Rule 20(F)(2), Workers' Compensation Court Rules, 85 O.S.2011, Ch. 4, app. This Rule specifies that objections, such as here, must be made at trial or are waived.[14] Moreover, this Court will not consider issues presented for the first time on appeal. *Jernigan v. Jernigan*, 2006 OK 22, ¶ 26, 138 P.3d 539, 548.

¶ 28 Employer further contends Claimant failed to establish her work activities constituted the major cause of her injuries and that she therefore sustained an accidental injury arising out of and in the course of her employment with Employer.

¶ 29 This Court disagrees. The record includes Claimant's testimony concerning her problems and work activities. Claimant and Employer corroborated the presence of chemical compounds in her work environment which affect the lungs and respiratory system. In addition, Claimant's physician's report discussed her work environment and activity as part of the history. Employer does not refute the general accuracy of this part of the report. Although the report notes Claimant's smoking history and previous medical treatment for non-cancerous nodes on her lungs, the report also notes Claimant has voice problems, wheezing when breathing, and that a pulmonary function test was performed showing severe large and small airway obstruction consistent with occupational asthma. Thus, Claimant's testimony and her physician's report support the determination she suffered injury.

¶ 30 Although there may be conflicting evidence supporting Employer's position regarding injury and causation, on review this Court is confined to a search for any competent evidence to support the Workers' Compensation Court's decision. *Owings v. Pool Well Service*, 1992 OK 159, ¶ 7, 843 P.2d 380, 382. "This Court does not reweigh the facts to determine where the preponderance lies." *City of Edmond v. Monday*, 1995 OK 132, ¶ 9, 910 P.2d 980, 983.

The Workers' Compensation Court, as the trier of fact, determines the credibility of witnesses, weighs the evidence, and draws reasonable inferences from the facts and circumstances in evidence. *Terry Motor Co. v. Mixon*, 1961 OK 60 at ¶ 6, 361 P.2d at 182. In determining whether an injury arose out of employment, the Workers' Compensation Court considers the record in its entirety and resolves issues of fact based on any one of the conflicting inferences that reasonable people may draw from the facts and circumstances in evidence. *Thomas v. Keith Hensel Optical Labs*, 1982 OK 120 at ¶ 7, 653 P.2d at 203.

*HAC, Inc. v. Box*, 2010 OK 89, ¶ 13, 245 P.3d 609, 614.

¶ 31 Accordingly, based upon this Court's review of the record according to the applicable standard of review,[15] the decision of the Three–Judge Panel is supported by compe-

---

14. Moreover, Rule 2, Workers' Compensation Court Rules, 85 O.S.2011, Ch. 4, app., specifies that the procedure followed in district court will serve as a guide when a matter of practice or procedure is not specifically dealt with in the Workers' Compensation Court Rules. A timely objection is a prerequisite to asserting error for admitting evidence in a civil trial. 12 O.S.2011, § 2104.

15. The standard of review applies regardless of whether the Appeal is from the Workers' Compensation Court or a Three–Judge Panel.

tent evidence. The decision is therefore sustained.

¶ 32 SUSTAINED.

GOODMAN, J., concurs, and THORNBRUGH, P.J., concurs specially.

THORNBRUGH, P.J., specially concurring.

¶ 1 I agree with the reasoning and holding of the majority that the legislatively mandated standard of review in Section 340(D) impermissibly infringes on the power of the Supreme Court under Article IV of the Oklahoma Constitution. I write separately, however, to emphasize the importance of the workers' compensation court's function in adjudicating an injured worker's claim.

¶ 2 In workers' compensation cases, a trial court's ability to see and hear the witnesses is especially crucial considering the interests at stake in the proceeding: the ability to earn a livelihood of an employee who has possibly been injured in the course of performing an employer's work, and who has *no other remedy at law available* to seek redress of that injury;[1] and the potentially long-term liability, at substantial cost, of an employer for the employee's condition. The importance of the standard of review as applied to a lower court's fact-finding was discussed at length by Judge Lumpkin in his dissent in *Seabolt v. State*, 2006 OK CR 50, 152 P.3d 235 (cited in the majority opinion herein). Though Judge Lumpkin's discussion was addressed to the importance of appellate review of fact issues decided by a jury, the following comments are equally applicable in the case at bar:

Let me make it clear that I believe appellate courts always have the authority to interpret and apply the law. However, it is when appellate courts fail to respect the work of the trier of fact ... and seek to substitute their own view of the facts that I believe the appellate function goes astray. It is this type of action which erodes respect for the appellate role and causes the average citizen to lose faith in our judicial system.

*Id.* at ¶ 2, 152 P.3d at 239 (Lumpkin, J., dissenting). The opinion further notes that, as a policy matter, the finality of a fact-finder's decision "is important to the entire process and the system itself," inasmuch as such finality "helps reduce court congestion, i.e. fewer parties appeal" and "the morale of trial court judges" is protected from "constant second guessing." *Id.* at ¶ 11, 152 P.3d at 240. An even more important reason from a practical standpoint, " 'is that a high proportion of reversals on review erodes public confidence in trial courts.' " *Id.* (citing K. Kunsch, *Standard of Review (State & Federal): A Primer*, Seattle Univ. L. Rev. vol. 18, no. 1, 12 (Fall 1994)).

¶ 3 As stated in the majority opinion here, the function of reviewing a lower court's decision resides exclusively in the judicial department, and is a function requiring the exercise of sound judicial discretion based on training and expertise in the law. Deference to the determinations of courts whose factual conclusions regarding the evidence is made based on the trial judge's own expertise and ability to discern credibility and demeanor first hand is crucial to the Supreme Court's ability to perform its own function. Any attempt by the Legislature to interfere with this function—particularly without stated or apparent reason or rationale—is not consistent with Articles IV and VII of the Oklahoma Constitution, is not consistent with our workers' compensation jurisprudence, and is not consistent with the maxim upon which our federal Constitution was founded, "that

---

1. With limited exceptions, the 1915 law abrogated a worker's right of action for personal injury incurred in the course of his or her employment, and abolished the jurisdiction of the courts over such actions "except as to the cause reserved to the State Industrial Commission for the benefit of an injured employee." Okla. Sess. Laws 1915, ch. 246, art. 6 § 2 (codified at Okla.

Stat.1921 ch. 56 § 7339). Pursuant to § 302(a) of the new Workers' Compensation Code:

A. The liability prescribed in this act *shall be exclusive and in place of all other liability of the employer and any of his or her employees, at common law or otherwise,* for such injury, loss of services, or death, to the employee.... (Emphasis added.)

the legislative, executive, and judiciary departments, ought to be separate and distinct." The Federalist No. 47, at 249 (James Madison)(The Gideon ed. 2001). I agree with the majority that Section 340(D)(4) represents such an attempt, and that, as such, the statute is invalid.